IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

---

BRYANT KEITH BENTLEY

                Petitioner,

vs.                  Case No: 8:97-cr-00014-RAL-UAM-2

UNITED STATES OF AMERICA

                Respondent.

OCT 30 2023 PM2:16
FILED - USDC - FLMD - TPA

---

**MOTION FOR REDUCTION IN SENTENCE PURSUANT TO
18 U.S.C. § 3582(c)(1)(A)(i); THE FIRST STEP ACT IN LIGHT OF
CHANGES MADE TO STACKING OF 18 U.S.C. 924 (c).**

---

## INTRODUCTION

People grow, mature and evolve, and because conditions and circumstances

change, it is virtually impossible to make sound decisions when first imposing

sentence about precisely how long someone should spend behind bars. But that is

exactly how the federal criminal justice system works. Judges are required to act as

if they are omniscient and the prison terms they impose are – for all intents and

purposes – final. Despite having no realistic hope of ever being released from

1

prison at a time when he could do something meaningful with his life, Mr. Bentley has done everything in his power to rehabilitate himself as demonstrated by his genuinely exceptional accomplishments and meritorious prison record.

He does not seek to justify, diminish, or detract from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct. Mr. Bentley was convicted of various federal offenses after a trial by jury. The jury found Bentley guilty of Conspiracy to Commit Armed Bank Robbery in violation 18 U.S.C. §371 and 2113, (Count 1). Armed Bank Robbery as to Count 2 in violation of 18 U.S.C. §2113 (a) & (d), and 2. Id. As to Count 3 & 5 he was convicted of Use of a firearm in furtherance of a crime of violence pursuant to 18 U.S.C. §924 (c). As to Count 4 Bentley was convicted of violating 18 U.S.C. §2113 (a) & (d) and 2.

At the time of sentencing the Court was required to impose a term of 510 months imprisonment and or 42.5 years. 25 years of that sentence was motivated by the stacking of 18 U.S.C. §924 (c). 5 years as to Count 3 and 20 years as to Count 5. Here, if sentenced today the current term of imprisonment would not be 42.5 years imprisonment. If sentenced today Mr. Bentley would be facing a much shorter sentence than the current sentence. That would be 15 years less as to Count 5.

2

Mr. Bentley would not be sentenced so harshly today as he was in November 1997. The 2018 First Step Act altered § 924(c)(1)(C) to impose the mandatory minimum 25-year (20-years in the instant matter) sentence only where a prior § 924(c) conviction "has become final." (In this case the mandatory minimum was 20 years for a second or successive 924 (c) conviction, 18 U.S.C. § 924(c)(1)(C)(i). If sentenced today, Bentley would not be subject to a sentence under § 924(c)(1)(C)(i) on Count's Three and Five. Instead, the applicable mandatory minimum would be 5 years – not 20 years – for possession of a weapon as to Count Five. It is troubling that Mr. Bentley is incarcerated under a sentence that is many years longer than the mandatory minimum to which he would be subjected if his offenses were committed, charged, and sentenced after the 2018 passage of the Act.

Mr. Bentley now moves this court pro-se for an order granting a reduction of sentence to time served as he respectfully submits that there are numerous "extraordinary and compelling reasons" that exist for a reduction of Mr. Bentley's current stacked 924(c) sentences.

## **ARGUMENT**

There is no excuse for his actions, however, Mr. Bentley submits that the current sentence is longer than necessary in this case to achieve the objectives

that a sentence be sufficient but not greater than necessary, to achieve the goals of sentencing as spelled out in 18 U.S.C. § 3582.

Bentley's sentence is also extraordinary for what caused it. Bentley received such a long sentence due to mandatory sentence-stacking provisions that no longer exist. If Bentley had been sentenced today, he would not have faced a sentence of 42.5 years.

Congress amended 18 U.S.C. § 924(c), a statute containing punishments that Congress has found to be unfair, with the enactment of the First Step Act. See P.L. 115-391, 132 Stat. 5194, at § 403(a) (Dec. 21, 2018). Bentley's current, and original sentence is just as unfair as those in *United States v. O'Bryan*, No. 96-CR-10076-03-JTM, 2020 WL 869475, (D. Kansas 2020); *US v. Marks*, No. 03-CR-6033L, 2020 WL 1908911 (WDNY April 20, 2020), and others as outlined below.

Serving an original sentence of over 42 years imprisonment was not easy for a young man at the age of 25 years old to accept and deal with. Mr. Bentley used his time in prison productively, and committed himself to changing his character. Entering prison as a young man with a de facto life sentence in years was not easy. There were two roads for Bentley to choose from, one was a road of mischief and trouble. The other was a road of self-betterment and rehabilitation.

Bentley chose a road of self-betterment. In his pursuit of rehabilitation, he made exceptional strides in bettering himself. He has completed numerous rehabilitative programs. Those programs include but are not limited to Making Peace, Fathers Behind Bars, Re-Entry Courses, Alcoholic Anonymous, Release Preparation, Stop The Violence, Process Excellence Through Team Work, Lean Basics, Career Builder Career Skills, Cognitive Skills Training, Circuit Training Courses, Automotive Chassis, CDL Courses, Anger Management, Resume Writing, Job Interview Skills, Automotive Technology Courses, Thinking Groups, Business Etiquette, Studies of Incarceration, Godly Leadership and a host of other life skills training programs. See Exhibit A. Mr. Bentley's focus was not just on himself but also on others around him. He has served as a mentor in the Christian Community at the prison he is housed in. Mr. Bentley has also participated in the Suicide Companion program helping other struggling with issues that come with incarceration. Most rewarding for Mr. Bentley is his work as a GED tutor helping other prisoners learn to read and write. See Exhibit A.

Mr. Bentley's record of rehabilitation can be considered extraordinary. Bentley submits that he is no longer the immature young man who made irrational and irresponsible choices to engage in criminal

conduct, and that there is no concern that he would be a danger to the

public if released. This is because he has learned to respect the rule of law, in

conjunction with his rehabilitation. See Exhibit A.

See Lois M. Davis, et al., Evaluating the Effectiveness of Correctional

Education: A Meta-Analysis of Programs That Provide Education to Incarcerated

Adults, RAND CORP. (2013) (explaining, a meta-analysis of studies that

evaluated correctional education and post-release recidivism found that "on

average, inmates who participated in correctional education programs had 43

percent lower odds of recidivating than inmates who did not"). Bentley has also

worked various jobs in prison showing his commitment to waking up every

morning and going to work demonstrating his effort at real life skills training. Mr.

Bentley has used his time in prison wisely to gain valuable knowledge and skills

that will allow him to contribute to society upon his release, Exhibit A.

Another factor that this Court can consider in its assessment as to whether or not

a sentence reduction is appropriate in this case is the current COVID-19 pandemic,

and the dangers to prisoners associated with it. Along with the living conditions that

Bentley has been under as a result of the COVID-19 pandemic. Mr. Bentley currently

takes medication for high blood pressure, and cholesterol issues. The high blood

pressure issue places him in much higher risk than other prisoners. The Court can

consider this in conjunction with other factors outlined herein in deciding whether or not to reduce the sentence in this case.

The availability of vaccines has not diminished the risk presented by COVID-19 in the federal prison system. See Letter from Federal Public & Community Defenders Legislative Committee to Members of Congress (May 4, 2021) (noting that "despite the increased availability of vaccines across the country, COVID-19 remains a life-threatening risk to those in BOP custody," and the "conditions in federal detention facilities remain dire"). Long-standing deficiencies in BOP's healthcare services, insufficient quarantine space, no requirement for staff to take COVID-19 tests, inability for inmates to social distance, and the fact that only 51% of BOP staff have accepted vaccination have contributed to the spread and lethality of COVID-19 in prisons.

The Court can consider the living conditions that Mr. Bentley has been under as a result of the COVID-19 pandemic that has devastated the FBOP. See United States v. Hatcher, 18-cr-454-10 (KPF) (SDNY 4-19-21).), The Court in granting the motion for compassionate release wrote, "Ms. Hatcher argues that although the risk to her health posed by COVID-19 may have diminished since the time of her vaccination, the conditions of her imprisonment over the last 13 months constitute "extraordinary and compelling reasons" justifying compassionate release. (*See* Dkt. #331). The Government argues that harsh conditions of incarceration occasioned by

the COVID-19 pandemic are insufficient to justify compassionate release. (Dkt. #332). The Court has previously found that harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States* v. *Padilla,* No. 18 Cr. 454-6 (KPF), 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) (denying motion for compassionate release while recognizing that petitioner had "identified sub-optimal conditions of confinement at FCI Elkton during the pandemic"). However, that decision was issued in the fourth, rather than the thirty-fifth month of the COVID-19 pandemic.

Moreover, it is also true that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences "harsher and more punitive than would otherwise have been the case." *United States* v. *Rodriguez,* No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020); *see also United States* v. *Mcrae,* No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more

punishing."); *United States* v. *Ciprian,* No. 11 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021) (same).

Mr. Bentley submits that he is no longer a threat to public safety and the conviction in this case is a clear deterrent from committing crimes for not only Bentley but others as well.

In terms of both specific and general deterrence, there is overwhelming evidence in the scientific literature that the certainty of being caught is a vastly more powerful deterrent than the [severity of the] punishment. United States v. Browning, 2021 U.S. Dist. LEXIS 38058, at *12-13 (E.D. Mich. Mar. 2, 2021). Browning quotes the findings made by the United States Department of Justice (DOJ) article entitled, "Five Things About Deterrence 1, at 12-13 (2016), which states:

Severity refers to the length of a sentence. Studies show that for most individuals convicted of a crime, short to moderate prison sentences may be a deterrent but longer prison terms produce only a limited deterrent effect.

Certainty refers to the likelihood of being caught and punished for the commission of a crime. Research underscores the more significant role that certainty plays in deterrence than severity — it is the certainty of being caught that deters a person from committing crime, not the fear of being punished or the severity of the

punishment. Effective policing that leads to swift and certain (but not necessarily severe) sanctions is a better deterrent than the threat of incarceration. In addition, there is no evidence that the deterrent effect increases when the likelihood of conviction increases. Nor is there any evidence that the deterrent effect increases when the likelihood of imprisonment increases.

See also Daniel S. Nagin, Deterrence in the Twenty-First Century, 42 Crime & amp; Just. 199, 201 (2013) ([T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased [by longer sentences]).

All of these circumstances lead Bentley to seek a sentence reduction under the federal compassionate release statute. See 18 U.S.C. § 3582(c)(1)(A)(i).

After the changes made to the compassionate release statute by the First Step Act, district courts no longer require a motion from the Director of the Bureau of Prisons to resentence federal prisoners under 18 U.S.C. § 3582(c)(1)(A)(i). This Court may resentence if a prisoner files a motion and establishes extraordinary and compelling reasons for a sentence reduction.

Those extraordinary and compelling reasons are present here because Bentley was given an unusually long sentence under a peculiar statutory provision that Congress has since amended because it was too punitive; and he has compiled a remarkable record of rehabilitation showing that, if released, he is no danger to the public. The COVID-19 pandemic also places him in danger if he were to contract the virus. In light of the above mentioned it is clear that there are extraordinary and compelling reasons for this Court to resentence Bentley to time served.

Moreover, the Sentencing commission most recently issued its amendments to the Sentencing Guidelines. The Sentencing Commission recognizing the exact arguments that Mr. Bentley is making herein regarding the overly harsh stacked sentence has made changes giving Federal District Court judges the authority to reduce those sentences. In pertinent part those amendments state;

**(6) UNUSUALLY LONG SENTENCES.** If a defendant received an **unusually long sentence** and has served at least 10 years of the term of imprisonment, **a change in the law (other than an amendment to the guidelines manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason**, but only where such a change would produce a gross disparity between the sentence

being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendants individualized circumstances.

This was introduced as a result of the First Step Act changes to the overly harsh sentences under 21 U.S.C. §851 and 18 U.S.C. §924 (c). In this case there is an unusually long sentence that Congress has found to be overly excessive. Why did Congress make these changes? See Judge Gleeson's decision in United States v. Holloway, 68 F. Supp. 3d 310 (EDNY), (Judge Gleeson was also an architect on the recent Sentencing Commission) stated, "Holloway was sentenced to 57 year and 7 months. "Shortly before trial in 1995, the government offered Holloway a plea bargain. In exchange for Holloway's plea of guilty to the carjackings, it would drop two of the three § 924(c) counts, resulting in a sentencing range of 130–147 months. A sentence at the bottom of that range would have required Holloway to spend about nine years in prison.

Holloway insisted on a trial. He got one, but making that choice required him to face all three § 924(c) counts. Section 924(c) counts are a triple threat. First, they carry mandatory sentences, which by definition take a degree of judging out of sentencing. Second, they result in onerous enhancements for "second or subsequent [§ 924(c) ] conviction[s]." That sounds like a typical recidivism enhancement until you consider that the "second or subsequent" convictions can occur in the same trial as the first one, as they did here. Third, the mandatory

sentences required by § 924(c) are also mandatorily consecutive, to one another and to all other sentences in the case. As a result, cases like Holloway's produce **sentences that would be laughable if only there weren't real people on the receiving end of them**."

In Holloway Judge Gleeson asked than US Attorney and later Attorney General Loretta Lynch to see that justice be done in this case by the government agreeing to vacate two of Holloways 18 U.S.C. §924 (c) counts. After careful consideration the US Attorney's office agreed and Holloways was eventually resentenced and given a second chance to reclaim his life. Judge Gleeson wrote, "There are injustices in our criminal justice system, including in this district, and they often result from the misuse of prosecutorial power. I have pointed some out in recent years in the hope that doing so might help eradicate or reduce the number of such abuses. But prosecutors also use their powers to remedy injustices. In the spirit of fairness—and with the hope of inspiring other United States Attorneys to show similar wisdom and courage—I write to applaud the admirable use of prosecutorial power in this case. The power United States Attorney Loretta Lynch has put to use in Francois Holloway's case inheres in our adversarial system. It is the power to seek justice even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence. Even in those circumstances, a prosecutor can do justice by the simple

act of going back into court and agreeing that justice should be done. After careful consideration of Holloway's crimes, the views of his victims, and his conduct during the two decades he has been imprisoned as a result of this case, the government has decided that it need not stand by silently while Holloway serves three more decades of an unjust sentence. Specifically, it has agreed to an order vacating two of Holloway's counts of conviction and to a resentencing of him on the remaining counts. Even people who are indisputably guilty of violent crimes deserve justice, and now Holloway will get it.

Certainly, the government agrees that Congress under President Trump found that stacked 18 U.S.C.§924 (c) charges are overly harsh and wrong. The United States Sentencing Commission wisely asked Congress to reform § 924(c) to blunt the harsh impact it mandates in many cases. And Congress did what was asked and now the Sentencing Commission has gone even further after much push back from the US Attorney's office in many districts arguing that Federal Judges did not have the power to judge or reduce a sentence.

The legislative history of § 3582(c)(1)(A) underscores its applicability to circumstances like the ones presented here. Congress did not cabin what can constitute an "extraordinary and compelling reason," and the Senate Report states that the statute allows for "later review of sentences in particularly compelling situations," such as the reduction "of an unusually long sentence." S. Rep No. 98-

225, at 55–56, 121 (1983). In abolishing parole and creating a "completely

restructured [G]uidelines sentencing system," id. at 52, 53 n.74, Congress

recognized the need for judicial authority to reduce previously-imposed sentences:

The Committee believes that there may be unusual cases in which an

eventual reduction in the length of a term of imprisonment is justified by changed

circumstances. These would include cases of severe illness, cases in which other

extraordinary and compelling circumstances justify a reduction of an unusually

long sentence, and some cases in which the sentencing guidelines for the offense of

which the defendant was convicted have been later amended to provide a shorter

term of imprisonment. Id. at 55–56 (emphasis added). This authority empowered

judges to reduce a term of imprisonment when justified by factors that previously

could have been addressed through the (now abolished) parole system, while

keeping "the sentencing power in the judiciary where it belongs." Id. at 121.

Allowing district court judges to determine what extraordinary and

compelling reasons are to reduce a sentence are not and is not an "end run around

Congress's careful effort to limit the retroactivity of the First Step Act's reforms."

This was and is made clear by the Sentencing Commissions new amendments.

See also *United States v. Jamal Ezell*, Case No: 02-815-01, (2-11-21) in

which Judge DuBois reduced the 132 stacked 924(c) sentence to time served and

or 22 years after finding that the Court had the authority to do so. Judge Dubois

15

wrote like the sentencing court in this case, in its Memorandum on sentencing dated March 3, 2006, the Court expressed concern over the unduly harsh nature of Ezell's sentence, stating, *"sentencing Mr. Ezel to prison for longer than the remainder of his life is far in excess of what is required to accomplish all of the goals of sentencing." United States v. Ezell*, 417 F. Supp. 2d 667, 671 (E.D. Pa. 2006), aff'd 265 F. App'x 70 (3d Cir. 2008). However, the Court "reluctantly conclude[d]" that Ezell had presented no grounds for reducing the 132-year mandatory sentence and that it was bound by law to impose the sentence. Id. at 672."

The court went on to say, "Having concluded that *Ezell's* sentence was indeed harsh, the Court thus examines whether, in combination with other factors related to *Ezell's* rehabilitation, the nature of *Ezell's* sentence constitutes an "extraordinary and compelling" reason meriting a sentence reduction under § 3582(c)(1)(A)(i). See *Brooker*, 976 F.3d at 238 (2d Cir. 2020) (naming "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction). Joining several courts of appeals, and a growing consensus of district courts, this Court determines that it does. See *McCoy*, 2020 WL 7050097 (affirming district courts' finding of extraordinary and compelling circumstances based primarily on the severity of defendants' § 924(c) sentences); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020) (vacating and

remanding district court's denial of compassionate release motion based in part on

the severity of defendant's § 924(c) sentence); see also ***United States v. Clausen***,

No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (finding

extraordinary and compelling reasons based, in part, on defendant's "off the

charts" sentence, "which is longer than Congress now deems warranted")."

Recently, Judge Rakoff reduced a life sentence to 35 years for a man

convicted of stacked 924 (c)'s that included the murder of at least one person and

the attempted murder of another. See United States v. Chaz Glynn, 06-cr-580

(SDNY 2-24-2022).

Moreover, See Concepcion v. United States, 597 U.S. __ (2022). Moreover,

Concepcion affirmed district courts' discretion to consider any relevant information

in resentencing, bounded only when Congress or the Constitution expressly limits

the type of information that may be considered in modifying a sentence. Nothing in

18 USC 3582(c)(1)(a) supports the notion that non-retroactive changes are excluded

from being "extraordinary and compelling."

Justice Sotomayor writing for the court stated, "The question in this case is whether

a district court adjudicating a motion under the First Step Act may consider other

intervening changes of law (such as changes to the Sentencing Guidelines) or

changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.

The Court holds that they may. It is only when Congress or the Constitution limits

the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained. Nothing in the First Step Act contains such a limitation.

Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments. The District Court in this case declined to consider petitioner Carlos Concepcion's arguments that intervening changes of law and fact supported his motion, erroneously believing that it did not have the discretion to do so, and the Court of Appeals affirmed. The Court now reverses."

This makes clear that this Court has the authority to determine if and what extraordinary circumstances are, and reduce Mr. Bentley's sentence if the Court so chooses. Mr. Bentley is asking this Court to do what many courts have done that is exercise the enormous power given back to federal judges and allow Mr. Bentley a second chance to reclaim his life.

Federal Judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that

BOP once held under the pre- First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

Courts across the nation have been reducing stacked sentences for the same reasons requested by Bentley. Many in cases wherein there were armed robberies as the underlying crimes. Crimes much more serious than that of Mr. Bentley See; *United States v. Defendant*(s), No. 2:99-CR00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020); *United States v. Hope*, No. 90-CR-6108-KMW-2, at 3-5 (S.D. Fla. Apr. 10, 2020); *United States v. Millan*, No. 91- CR-685-LAP, 2020 WL 1674058, at *5-8 (S.D.N.Y. Apr. 6, 2020) (Preska, J.); *United States v. Decator*, No. 95-CR-0202-CCB, 2020 WL 1676219, at*2-3 (D. Md. Apr. 6, 2020); *United States v. Reyes*, No. 04-CR-970, 2020 WL 1663129, at *2-3 (N.D. Ill. Apr. 3, 2020); *United States v. Owens*, 97-CR-2546-CAB (S.D. Cal. Mar. 20, 2020), at 4-5; *United States v. Redd*, No. 97-CR-6-AJT, 2020 WL 1248493, at *6-8 (E.D. Va. Mar. 16, 2020); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020), 2020 WL 1047815, at *5-6; *United States v. O'Bryan*, No. 96-CR-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Urkevich*, No. 8:03-CR-27, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019).

On July 24, 2020, Judge Gerald J. Pappert granted relief in a stacked 924(c) robbery case that resulted in a 213-year sentence.  See *United States v. Clausen*, No. 00-291-2, Eastern District of PA, Dkt #277.

## I.    MR. BENTLEY HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED.

Mr. Bentley has properly exhausted his claim for a reduction of sentence under the compassionate release provision, and he presents this Court with extraordinary and compelling reasons for reducing his sentence.

### A. Bentley has properly exhausted his request for a reduction of sentence under the compassionate release statute.

Bentley has filed a request for a reduction of sentence under the compassionate release statute with the warden, Exhibit B. The BOP has not filed a motion within 30 days with the Court regarding Bentley's request; thus, Bentley has properly exhausted his claim. See 18 U.S.C. § 3582(c)(1)(A) (courts can reduce a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies). All the First Step Act requires is the 30-day time frame - the text of the legislation makes this clear. See *Marks* **supra**; See also *United States v. Rita Gluzman*, 2020 WL 4233049, (SDNY 7-23-20).

20

First, Bentley was sentenced under the 18 U.S.C. § 924(c) stacking provisions that Congress has reduced after recognizing that they are both grotesque and unfair. If sentenced today under the law as it stands now, Bentley would not have been subjected to the overly harsh sentences that were the driving force in this case under 18 U.S.C. §924 (c).

Secondly, Bentley has shown a record of rehabilitation demonstrating, if released, he is no danger to the public. Third, he is in danger due to the COVID-19 pandemic and virus, and has been living under overly harsh sentences. Fourth, he was sentenced to an extraordinary lengthy sentence at a young age.

With passage of the First Step Act, Congress concluded that the punishments arising from stacking provisions of 18 U.S.C. § 924(c) were too punitive and unfair. Nowhere is that more apparent than in Bentley's case, where he originally received stacked and consecutive mandatory minimum punishments equaling 25 years *for* his § 924(c) convictions alone. Even though Congress failed to make the changes to § 924(c) retroactively applicable to cases in which the sentence was imposed prior to First Step's enactment. See P.L. 115-391, 132 Stat. 5194, at § 403(b) (Dec. 21, 2018) ("This section, and the amendments made by this section, shall apply to any

offense that was committed before the date of enactment of this Act, if a
sentence for the offense has not been imposed as of such date of enactment.").

Had Congress made the changes retroactively applicable to all, every
defendant sentenced to stacked § 924(c) offenses would have been
*categorically* eligible for sentencing relief. By contrast, those sentenced under
the § 924(c) stacking provisions and seeking relief under the compassionate
release provision must establish extraordinary and compelling reasons
*individually* in order to be eligible for relief. That Congress chose to foreclose
one avenue for relief does not mean it chose to foreclose all means of
redressing draconian sentences imposed under § 924(c). And nothing about
Congress's decision to pass prospective-only changes to § 924(c) prevents this
Court from resentencing Bentley under the compassionate release statute on the
basis of individualized extraordinary and compelling reasons.

Bentley has now served over 26 years of imprisonment, and his
sentence is grossly disproportionate to the crimes he committed — another
extraordinary and compelling reason. Some people do change, and when that
change has been made, federal tax dollars should not be wasted on
overincarcerating our citizens.

At the time of sentencing what decision makers cannot measure is the
capacity for people to change.  However, some people do.  Mr. Bentley is one of

those people. Former President Trump himself acknowledged that people do change, and he did so when he released Alice Marie Johnson from the life sentence that was imposed on her. We also saw Matthew Charles released from prison based on the *First Step Act* - and it was President Trump who invited Mr. Charles to the State of The Union Address. When the Court originally sentenced Mr. Charles to 35 years in prison, it could not have foreseen the changes that he made in his life - never receiving a disciplinary report while in prison, helping others with their legal pleadings, studying the bible, teaching GED classes. Mr. Charles changed his character so much that the President invited this man to the State of the Union address. Mr. Charles' original sentence of 35 years was largely driven because of his criminal history. At the time of sentencing, the sentencing judge explained that Mr. Charles had "a particularly violent history" and "had demonstrated by his actions that he's a danger to society and should simply be off the streets." *United States v. Charles*, 843 F.3d 1142, 1145, (6th Cir. 2016), (Dkt. # 96 Sentencing Transcript @ page 283). That history included "kidnapping a woman on two consecutive days for the purpose of terrorizing her; burglarizing a home; fleeing from a police interrogation, shooting a man in the head, and attempting to run off in the victim's car. Mr. Charles is now a free man living a law-abiding life despite this record, after having served 21 years in prison; a much shorter term of imprisonment than Bentley. However, this is an example that

people do change, and do deserve second chances. As stated, above Mr. Bentley is one of those people.

Mr. Bentley has a family that loves and cares for him. They are ready and willing to assist Bentley with a successful reentry. He has maintained strong ties and support with both family and friends. If released Mr. Bentley would be living with his sister Dalia Bentley at 520 Serenity Mill Loop, Ruskin, Florida 33570. The family fully supports Mr. Bentley's release and are committed to assisting Mr. Bentley with a successful reentry to society. See Exhibit C.

Bentley submits that he is no longer a threat to public safety. The biggest indicator of this is his commitment to rehabilitation, and dramatic character change. The Court should also consider whether, upon release, the defendant would pose "a danger to the safety of any other person or to the community." This Court is not faced with a stark choice between simply turning Bentley loose, or continuing his incarceration. The Court has the option of reducing Bentley's period of incarceration, followed by a term of supervised release.

Supervised release, which is laid out at 18 U.S.C. § 3583, was created by Congress as "a form of post confinement monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). As the Supreme Court has explained, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends,"

providing "individuals with post confinement assistance" through the supervision

of the court. *United States v. Johnson*, 529 U.S. 53, 59 (2000). "The court can

provide such assistance because, '[w]hile on supervised release, the offender [is]

required to abide by certain conditions,' *Johnson v. United States*, 529 U.S. at

697, such as regularly reporting to a probation officer, pursuing schooling or work,

and refraining from further criminal activity, *see* U.S.S.G. § 5D1.3(c); 18 U.S.C. §

3583(d)." *United States v. Island*, 916 F.3d 249, 253 (3d Cir. 2019). Congress

has also authorized supervising courts to revoke supervised release and order re-

imprisonment when defendants fail to meet their release conditions. *See* 18 U.S.C.

§ 3583(e); *Johnson v. United States*, 529 U.S. at 697.

Supervised release is routinely imposed as a component of sentencing,

including sentences for crimes far more serious than those of which Bentley has

been convicted. Supervised release affords the court an array of conditions which

it can impose, the defendant's compliance with which will be monitored by a

probation officer. New conditions can be added as necessary. Beyond the low risk

that Bentley now presents, whatever risk there is can be further mitigated by

supervised release. *See United States v. Williams*, No. 04cr95, 2020 WL 1751545,

at *3 (N.D.Fla. Apr. 1, 2020) (although court could not conclude that defendant

posed no risk at all to public safety, "the risk of him engaging in further criminal

conduct is minimal and can be managed through home confinement and the terms of his supervised release."

There are numerous reasons that demonstrate extraordinary and compelling reasons to reduce the sentence in this case. Mr. Bentley has spent over 26 years of his life in prison, more years than he was alive at the time of his arrest. He is no longer the man that he once was. He has a plan to succeed if given a second chance by this Court to reclaim his life.

## CONCLUSION

Mr. Bentley is asking this Court for compassion, and in asking for that compassion he asks that this Court exercise the enormous power given back to federal sentencing judges by Congress.

This request for compassionate release is a request for a second chance for Mr. Bentley to reclaim his life. To be the son, brother, husband, father, and law-abiding citizen he was meant to be.

Respectfully Requested,

Bryant K. Bentley

Dated: November 1, 2023

26

## CERTIFICATE OF SERVICE

I, Bryant K. Bentley hereby certify that on this ____ day of _____ 2023,

I did place the enclosed Motion Pursuant to 18 U.S.C. § 3582, in the prison mailing

system addressed to the following parties:

United States District Court Clerk
Court Clerk

United States Attorney's Office
VIA ECF

Signed under the penalty of perjury

this ____ day of _____, 2023

_____

Bryant K. Bentley